## WHITTEMORE BROS. & CO. v. WORLD POLISH MFG. CO.

(Circuit Court, M. D. Pennsylvania. February 8, 1908.)

No. 31, October Term 1907, In Equity.

1. PATENTS—SUITS FOR INFRINGEMENT—EFFECT OF PRIOR DECISIONS.

An interlocutory decree adjudging infringement of a patent is not conclusive between the parties in another suit in a different court, and the question must be given independent consideration therein.

2. SAME—INFRINGEMENT—CAN OPENER.

The Cleveland patent, No. 727,905, for a can opener, which consists of a lever device for attachment to cans or boxes having tight fitting covers to pry off the covers, was not anticipated and discloses patentable invention, but is limited by the prior art to the specific construction described and claimed. As so construed, *held* not infringed by a device which lacks an offset in the body of the can between that and the cover in which the lever is to lie, which is an element of the third claim; and in which the outside handle does not lie substantially parallel to the surface of the receptacle as required by the other two claims.

In Equity. Suit for infringement of letters patent, No. 727,905, for a can opener, issued to Newcomb Cleveland May 12, 1903. On final hearing.

Faust F. Crampton, for complainants.

Joseph R. Edson, for respondents.

ARCHBALD, District Judge. The patent in suit, of which the complainants are now the owners, was issued May 12, 1903, to Newcomb Cleveland for a so-called can opener, a device to assist in the removal of the covers of cans or boxes, which, on account of that which they are designed to hold, require a tight fit or closure, such as shoe and

stove polish boxes, baking powder cans, and the like. "The cover part of these receptacles," says the inventor, "is usually made with a very tight fit on the body portion, and often the contents of the receptacle is of such nature as to act somewhat as a glue between the body and lid or cover. In such cases a direct upward push on the lid or its rim has generally been found quite inadequate to open the receptacle." By the invention, as he explains, he provides a positively operating lever-opener adapted to so co-operate with the box, that the latter will act as the fulcrum-bearing, and at the same time hold the lever in operative position till the box is open, the mere closing of the box securing the cover to it. And, in carrying out the inventive idea, he makes the fulcrum and resistance points bear, one upon the body, and the other upon the cover of the receptacle, the lever preferably being partly inclosed in and partly projecting therefrom, the outside portion or handle being thus in position for ready manipulation. The power applied to the handle is greatly multiplied, as he claims, at the resistance point, as the device acts on the principle of a lever or inclined plane and wedge. And the lever having a portion adapted to be clamped between the body and the cover is thereby firmly secured to the box. This description, taken from the specifications, sufficiently shows the structure and character of the device, and the particular object sought to be accomplished thereby.

The patent has three claims, all of which are relied on, as follows:

"1. The combination with a receptacle and a cover fitting thereon, of a lever-opener comprising a portion lying within the receptacle, a portion lying between the receptacle and its cover, and a handle portion extending beyond the other portions substantially parallel with the surface of the receptacle.

"2. The combination with a receptacle and a cover fitting thereon, of a lever-opener comprising a portion lying between the receptacle and its cover, a portion turned over the rim of the receptacle, another portion turned out under the rim of the cover, and a handle portion extending beyond the other portions substantially parallel with the surface of the receptacle in position for operation to open the receptacle.

"3. The combination of a receptacle comprising a body and a cover, with a lever-opener partly inclosed and held between said body and cover when the receptacle is closed, said receptacle being provided with an offset in which the part of the lever between the body and cover of the receptacle may lie, to permit of a tight closure of the receptacle."

Numerous efforts have been made and not a little ingenuity exercised, from time to time, by different inventors, as the patents in evidence show, to secure a successful can or box opener, and a contrivance of the character of that in suit may therefore be regarded as patentably inventive; and there being nothing exactly like it in the prior art it is also new and unanticipated. At the same time, there is no great invention disclosed in it, and, whatever there is, is necessarily circumscribed by devices of a similar kind of which, as just intimated, there are not a few already existing. No broad range therefore is to be given to it, and the patent is to be simply taken for that for which in terms it stands. As will be noted the device is essentially a detachable lever, fulcrumed on the interior rim of the box by means of a saddle or hook like lug-end, which extends under the cover and is hung on the rim of the box body, by which, when the cover is shut, it is kept

in operative position, the pressure required to force off the cover being brought to bear on the edge of the cover rim when the exterior arm or handle is moved upwards, the points of resistance and pressure being reversed when it is moved in the opposite direction. The use of a lever attachment to pry off a cover or lid is not new, being found in the Fliehr Lid Lifter (1890), in the Eldredge Steam Cooker (1891), and in the Baker Cover Lifter (1903), in each of which it moves tangentially, the same as is claimed for it, here. A lever is also shown in the Amos Cooker (1887), in the Smith Shoe Polish Box-Opener (1894), and in the three several Record Can-Openers (1896, 1900); to say nothing of others. The distinguishing feature of the Cleveland device, however, consists in the particular form and arrangement of leverage adopted, which nowhere else appears, by which, while the exterior or power arm is outside the box or receptacle, the interior or pry arm, by means of its hook-like side attachment, is made to extend under and between the cover and the box rim, upon each of which it bears, obtaining thereby the necessary purchase to force them apart, and, being clasped between them when the box is shut, is in a position to be immediately and effectively operative to open it again. In order the better to keep it in position, as well as to secure a tight closure, in a modified form of the device an offset or recess is provided in the rim of the box into which that part of the interior arm of the lever is fitted, which lies between the box and the cover.

As stated above, an opener of this character is supposed to be particularly adapted for use in connection with the small round shoe polish boxes which abound, the polish or paste put up in them having volatile ingredients which require them to be kept tightly shut, while their constant use makes it necessary that they should be readily and quickly opened. The complainants, like the respondents, are manufacturers of and dealers in this class of goods, but, notwithstanding this fact and the advantages claimed for the device in suit, no commercial use has ever been made of it, by them or others, the nearest to it being the opener put out, at one time, with the Ravenola Shoe Polish boxes, by the company of which Mr. Cleveland, the patentee, is the head. The utility of the invention is therefore assailed, and the patent declared to be a mere paper patent, which equity will not enforce. But without entering upon that question, there are other grounds upon which the case necessarily turns.

The respondents, as just intimated, are manufacturers of a rival shoe polish to that of the complainants, which is put out in similar packages, and a similar opener is made use of, which is claimed to be an infringement. This opener consists of a short flat piece of metal, exterior to the box and extending tangentially to it, shaped like the head of a key or thumbscrew, and capable of being manipulated or turned, the same as that, between the thumb and finger. A narrow flat crane-like neck or arm, projecting from the center, passes in under the arm of the cover and over the edge of the box, on which it rests like a saddle, the effect of twisting or turning the head or thumb piece being to spring or pry off the cover, pressure to that end being brought to bear on the edge of the cover by the purchase or leverage secured on the top of the box edge.

It was held by Judge Holt, in a suit brought in the Southern District of New York by the same complainants, against one Reinhardt, a selling agent of the respondents, that this was an infringement.[1]  The case was defended by the same counsel who appears here, and assuming that, by reason of privity of relation as well as by participating in this way in the proceedings, the respondents, although not immediate parties, would be bound if the decree was final (Bredin v. National Weatherstrip Co. [C. C.] 147 Fed. 741), being interlocutory merely (Harmon v. Struthers [C. C.] 48 Fed. 260), and having further been appealed from, as the matter stands, the decision is persuasive only, and the question must therefore receive distinct and independent consideration here.

The opinion of Judge Holt was very brief, being in fact a mere memorandum, and while it is equally effective, and may have been the subject of as much consideration, it naturally is not so convincing as if it was accompanied by a discussion, giving reasons.  He also apparently holds that the respondents' device offends against the entire patent, no distinction being made between the claims, which it is clear cannot be indiscriminately charged.  The third claim calls, as a special feature, for an offset or jog in the box or receptacle, into which the end of the lever, between the body and cover, is to fit and lie, so as to permit, as it is said, of a tight closure.  There is no such offset as this in the respondents' box, nor anything like it, and it does not therefore fulfill or infringe the claim.  It is sought to have it do so, however, by the suggestion, that of necessity, in every instance, when the cover is forced down into place, a depression or jog is made in the rim of the box under the pressure of that portion of the device which lies between the two, the box or receptacle not being able to be shut without effecting this.  But assuming that, roughly speaking, this is the fact, it is obviously not what was intended by the claim.  It is not such a temporary or forced recess as this that the inventor had in mind, occurring wherever the interior end of the opener happens to be caught between the box and the cover, but one, specifically arranged and prepared, into which, each time the box is closed, it is to be regularly fitted and set.  Otherwise the claim is bad, as a mere duplication of the others, all, according to this, resulting in the same structure, whichever is followed.  A regularly and purposely arranged offset is therefore clearly necessary in order to distinguish and save the claim, and, as nothing of the kind is to be found in the respondents' device, to this extent at least there is no infringement.

But the question of the general invention, represented by the other two claims, remains, as to which it must be confessed that in some respects the respondents have copied the patented device.  Not only does each operate on the principle of a lever, but the pry or weight end of the opener within the box has the same hook shaped neck or stem extending between the cover and the box, the cover being sprung or pried upwards in the same way, by pressure exerted against the rim, the purchase or leverage for it being secured by means of the hook

---

[1] This decision was reversed by the Circuit Court of Appeals of the Second Circuit.  See 159 Fed. 707.

end which is hung over and bears upon the rim of the box as a fulcrum, the actuating force being applied to the exterior or power arm. But this is only a part of the device, and as to the rest they plainly divide. Conceding that the two are of the same general type, the inventor did not attempt, or at least was not allowed, to cover every character of opener of the class to which they belong. By each of the claims in question, the exterior arm or handle of the complainants' device is specified as substantially parallel to the surface of the receptacle, and to this it is consequently confined. The invention not having been put into practical use, there is no commercial form with which to compare it as a standard. But in the model submitted to the examiner, at the time the patent was allowed, the exterior arm was shown hugging or encircling the periphery of the box, and this may be taken as the correct concrete expression of the invention responding to the terms of the claim. This construction, no doubt, has its advantages, which may have prompted it, the handle being out of the way, in the interest of compactness when the boxes are being shipped or stored, and also escaping being knocked out of place when in use. But whatever is to be so said of it, and even though the original conception may have been broader and has been unduly cut down, it is an essential feature of the invention as patented, that the exterior arm shall be substantially parallel to the surface of the receptacle, and, unless this appears, infringement is not made out. But that this is not true of the respondents' opener is clear. In direct contrast with what is so required the exterior arm or head stands out squarely at right angles to the plane of the rim, not parallel, but tangential thereto. Nor is the difference one of form alone, but of utility, if not of operative function as well. One practical difficulty with the patented device is that it is not easily kept in place. Hanging on the rim of the box by the hook at the inner end, with nothing to balance it, the exterior arm topples it over so that care has to be exercised each time the box is opened to see that it is properly adjusted before it is closed again. Nor, encircling the rim of the box, as it does, is the outer arm easy to manipulate, somewhat of an effort being required to engage and press upon it with the fingers so as to force the cover off. But, on the other hand, the convenience and ease of operation of the defendants' device is marked. Evenly balanced, as it is, on either side of the stem, it hangs wherever it is put on the edge of the rim without concern as to its being disarranged. The handle also, standing out from the rim of the box, and assuming the form and function of a key, which it is well called, is readily grasped and merely requires a slight twist or turn either way to press the cover off. These are substantial differences, due to inherent qualities, which no ingenuity of comparison can argue away. They result from the different structure of the handle, and the different relation it bears to the rest of the device, involved in which is the special feature called for by the claims in question, that it shall be substantially parallel to the body of the receptacle, which the respondents do not adopt.

No infringement therefore being found as to any of the claims of the patent, the bill will be dismissed on the ground of noninfringement. with costs.